FRUGÉ, Judge.
This suit arises out of an automobile accident which occurred on December 23, 1970, at approximately 6:50 P.M., in the City of Abbeville. Plaintiff, Flossie Wrights, is the widow of Anthony Ratliff, Jr., and she sued for the injuries she allegedly suffered as a result of the death of her husband, Anthony Ratliff, Jr., allegedly caused by the negligence of Carol Simon. The suit was filed against Carol Simon, the driver of the truck which allegedly col *203 lided with the vehicle driven by the deceased, Aetna Insurance Company of Hartford, Connecticut, Simon’s liability insurer, and Roy Young and Young Tow, Inc., Simon’s employer. The defendants denied negligence on the part of Simon, urged the contributory negligence of the deceased, and also urged the doctrine of sudden emergency. After trial on the merits, the trial judge rendered judgment in favor of the defendants, and the plaintiff brought this appeal. The appeal of the judgment in favor of Roy Young and Young Tow, Inc. has been abandoned by the plaintiff. We affirm.
The evidence presented at the trial indicated that the deceased was traveling in a 1966 Ford automobile in a southerly direction on South State Street approaching its intersection with Eighth Street in the City of Abbeville. He had stopped in his lane of travel north of the intersection of South State Street and Eighth Street, apparently intending to make a left turn. Carol Simon, the defendant, was traveling in a 1968 Ford truck in a northerly direction on South State Street approaching the same intersection. Immediately before Mr. Simon’s vehicle reached the intersection, the deceased attempted a left turn. Skid marks indicated that Mr. Simon attempted to brake his vehicle, but he was unable to avoid collision with the deceased’s vehicle. Mr. Ratliff died as a result of the accident and was pronounced dead on arrival at the hospital in Abbeville some few minutes after the impact.
The trial judge discussed the following facts in giving his reasons for rendering judgment in favor of the defendants. A stipulation was entered into by the parties at the outset of the trial that a blood alcohol count was taken from both drivers soon after the accident which indicated that the deceased’s blood was free of alcohol and that the percent of alcohol by weight in Mr. Simon’s blood was 0.09%. There were no other facts to indicate intoxication. The testimony of the investigating officer and the witnesses at the scene of the accident indicated that the defendant, Mr. ^imon, was in normal control of his faculties. The testimony of the defendant, Mr. Simon, revealed that he had had four or five beers and one drink of whiskey within the last several hours prior to the accident. His testimony further indicated that he had observed the deceased’s vehicle stopped at the intersection. He did not observe any turn signals being given by the deceased. His repeated testimony was that he was traveling at a rate of 35 miles per hour. When he saw the automobile turning into his lane he applied his brakes but could not avoid the collision.
The testimony of Mr. Prejean, a witness to the accident, was that the deceased was stopped at the intersection signaling his intention to make a left turn. When he proceeded with the turn, the deceased’s vehicle was struck by the truck driven by Mr. Simon. The testimony of both Mr. Prejean and Mr. Simon indicated that the deceased’s vehicle was barely moving when the collision occurred. Mr. Prejean testified that he could not recall whether the headlights on the Simon vehicle were burning, but he stated that he could see the Simon vehicle and that there was nothing visible to him that could have obstructed the deceased’s view of the Simon vehicle.
The testimony of the investigating officer indicated that the collision occurred in the northbound lane, Mr. Simon’s proper lane of travel. He further stated that the Simon vehicle left 25 feet of skid marks. He felt that the deceased was “cutting” the corner when the collision occurred. His conclusion was based on the fact that the collision took place north of and to the east of the center of the intersection.
The trial judge concluded that the proximate cause of the accident was the negligence of the deceased in making a left turn without first ascertaining that it could *204 be done in safety. He stated that there was some contradiction as to whether or not Mr. Simon’s headlights were burning at the time of the accident, but that the evidence did not convince him that they were not on at the time. He concluded that the deceased should have seen the approaching vehicle driven by Mr. Simon and refrained from making his left turn until he was certain that it could be completed safely. In discussing the doctrine of last clear chance urged by the plaintiff, the trial judge found that the evidence indicated that the accident happened almost immediately after the deceased commenced to execute the left turn, leaving the defendant no time in which to act to avoid the collision other than to brake his vehicle as he did.
The plaintiff argued that the trial judge was in error in basing his determination of the defendant’s ability to drive after drinking on LSA-R.S. 32:662. This argument was based on LSA-R.S. 32:662(C) which provides: “. This section has no application to a civil action or proceeding.” However, a study of the record of the testimony given at trial indicates that there is abundant evidence on which the judge could base his finding that the defendant’s ability to drive was not impaired by the drinks consumed by him earlier the afternoon of the accident. The testimony of the investigating officer was that the defendant did not appear to be under the influence of intoxicants shortly after the accident occurred. The testimony of a witness at the scene of the accident, Mr. Jimmie Paul Touchet, was to the same effect. The trial judge’s finding on this issue should not be disturbed.
The plaintiff further argued that defendant had the last clear chance to avoid the collision and that the trial judge’s finding on this matter was erroneous. To support his position, the plaintiff pointed out that the testimony of the defendant indicated that he saw that the deceased’s vehicle was barely moving as the deceased began the left turn. He further pointed out that the defendant did not swerve enough to avoid collision with the deceased’s vehicle.
The testimony of the defendant and Mr. Prejean, a witness to the accident, indicated that the deceased did enter the turn slowly, a factor which could indicate that the defendant had a chance to avoid the accident which followed. However, their testimony also indicated that the collision occurred almost immediately after the deceased started the left turn maneuver. The trial judge concluded that the defendant had no time to avoid the collision based on that testimony and the testimony that the defendant was 25 feet away from the deceased’s vehicle when the deceased started the left turn maneuver and traveling 35 miles per hour.
 One of the elements which must be proved by one asserting the doctrine of last clear chance is that at the time the defendant actually discovered, or should have discovered, plaintiff’s peril, defendant had a reasonable opportunity to avoid the accident. Ortego v. State Farm Mutual Automobile Insurance Company, 295 So.2d 593 (La.App. 3rd Cir., 1974); Epperly v. Kerrigan, 275 So.2d 884 (La.App. 4th Cir., 1973). The trial judge rightly concluded that the doctrine did not apply in this case. The facts indicate that the defendant did not have a reasonable opportunity to avoid the accident because the turn was begun by the deceased after the defendant’s vehicle was too close for the defendant to avoid a collision.
The plaintiff argued that the defendant’s testimony was somewhat confusing in the answers given as to why he did not swerve more to avoid the collision. The trial judge’s written reasons for judgment did not discuss this point. In answering interrogatories propounded to him prior to trial the defendant stated that he did not swerve too much to his right because of the location of a car, which was later determined *205 to be that of Mr. Prejean. At the trial the defendant testified that he did not swerve much when he saw the deceased begin his turn because of the fear of running off the road and into a ditch, thereby losing control of the truck.
The element of last clear chance discussed above requires that the defendant have a reasonable opportunity to avoid the accident. This element would not require the defendant in the present case to swerve to the point of losing control of the truck and to run the risk of colliding with Pre-jean’s vehicle or some other vehicle in the process of trying to avoid the deceased’s vehicle. The trial judge found that the defendant acted reasonably under the circumstances ; we find no manifest error in this conclusion.
The plaintiff argued that there was some question as to whether the defendant had turned on the headlights of his truck prior to the accident, and argued that this fact might explain why the deceased started into the turn in the face of the oncoming vehicle driven by the defendant. The trial judge stated in his written reasons for judgment that the evidence did not convince him that the truck headlights were not on at the time of the accident. The defendant testified that he could not recall whether he had turned on the lights but that he assumed that he had since the evening was dark enough to drive with the lights on. Mr. Prejean testified that he was not sure whether the truck headlights were on. The testimony of the plaintiff’s witness, Mr. Williams who was a passenger in the vehicle driven by the deceased, indicated that the truck lights were turned on at the time of the accident. We find no manifest error in the trial judge’s conclusion that the lights were on.
For the reasons assigned, we affirm the judgment of the District Court. The plaintiff-appellant is assessed with all costs of this appeal.